UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil File No.:

DaJovan B. Pettit,

       Plaintiff,

v.

Allina Health System,
DBA Abbott-Northwestern Hospital,
a non- Profit Domestic Corporation.

       Defendant.

**PLAINTIFF'S AMENDED COMPLAINT
AND CAUSES OF ACTION**

## PLAINTIFF'S COMPLAINT FOR:

<u>FEDERAL VIOLATIONS</u>

1) Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq., as amended
2) Color Discrimination in violation of 42 U.S.C. § 2000e, et seq., as amended
3) 42 USC. Sec. 1981

<u>STATE OF MINNESOTA VIOLATIONS</u>

4) Race Discrimination in violation of Minn. Stat. §363A.08, et seq., as amended;
5) Color Discrimination in violation of Minn. Stat. §363A.08, et seq., as amended;
6) Wrongful interference with Economic Advantage

## NATURE OF THE CASE

This is an action brought by Plaintiff DaJovan B. Pettit, a United States citizen and resident of the state of Minnesota (herein after Plaintiff) against Defendant Allina Health Systems and Abbott Northwestern Hospital, a non-profit domestic corporation. Plaintiff seeks redress for discrimination and constructive discharge occurring between 2018 and 2021.

## JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, [Federal Question]; statutory authority, 42 U.S.C. §2000e, *et seq.*, as amended, and 28 U.S.C. §1367(a) [Supplemental Jurisdiction] of this Court. The matter in controversy exceeds, exclusive of interest, $75,000.

2.    The Court has jurisdiction over claims arising under Minnesota state law pursuant to its pendent jurisdiction and 28 U.S.C. §1367(a). The claims arising under Minnesota state law and the claims arising under federal law arise from the same case or controversy, and they have a common core of operative fact.

## VENUE

3.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(l)-(2). Plaintiff resides in the county of Hennepin, State of Minnesota   A substantial part of the wrongs alleged herein were committed within Hennepin County, Minnesota, which is within the District of Minnesota. The claims arise from employment at Allina/Abbott Northwestern Hospital.

## PERSONAL JURISDICTION

4.    Defendant is a non-profit domestic corporation doing business at 2925 Chicago

2

Avenue Mail Route 10905, Minneapolis, MN 55407-1321. Allina does business throughout Minnesota including Hennepin County and has a registered office address of 2925 Chicago Avenue Mail Route 10905, Minneapolis, MN 55407-1321. It does not currently have a registered agent.

## THE PARTIES

PLAINTIFF DAJOVAN B. PETTIT

5.      Plaintiff is 36-year-old African American female, who was born in Chicago. She is a citizen of the United States. Plaintiff worked for Defendant for approximately 10 years before her separation from Allina/Abbott Northwestern Hospital.

DEFENDANT ALLINA

6.      Defendant Allina Health System, (hereinafter "Allina" or "Defendant") doing business at 2925 Chicago Avenue Mail Route 10905, Minneapolis, MN 55407-1321. Its Chief Executive Officer is Penny Wheeler, MD. Defendant runs Abbott Northwestern Hospital in Minneapolis, Minnesota. Defendant conducts very substantial business in Minnesota and Hennepin County.

7.      Allina is responsible for its owners, officers, and supervisors under respondent superior. All actionable behavior occurred during the course and scope of employment of the two parties.

8.      Plaintiff was constructively discharged from her employment with Defendant as a direct and proximate result of open racism and discrimination committed by Defendant, its employees, servants, and agents. Plaintiff filed complaints with the EEOC and

Minnesota Department of Human Rights. The investigation went on for countless months. On June 12, 2023, Ms. Pettit received the notice of determination and right to sue letter. She sent the same to her counsel on the same day. Attached herewith and incorporated herein, is a true and accurate copy of the notice letter.

GENERAL ALLEGATIONS FEDERAL CLAIMS

9.    Plaintiff brings this action for Race Discrimination pursuant to 42 U.S.C. §2000e, et seq., as amended.

10.    Plaintiff brings this federal action for Color Discrimination pursuant to 42 U.S.C. §2000e, et seq., as amended.

11.    Plaintiff brings this federal action for failure to contract under 42 USC 1981.

STATE CLAIMS

12.    Plaintiff brings a separate claim for Race discrimination in violation of Minn. Stat. §363A.08, et seq., as amended.

13.    Plaintiff brings a separate claim for Color discrimination in violation of Minn. Stat. §363A.08, et seq., as amended.

14.    The Minnesota Human Rights Act ("MHRA"), Minn. Stat.§ 363A.08, Subd. 2. Employer. Except when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, status about public assistance, familial status, membership or activity in a local commission, disability, sexual orientation, or age to:

(1)    refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or

4

(2)    discharge an employee; or

(3)    discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

15.    Plaintiff brings a separate action for wrongful interference with economic advantage.

## FACTS

16.    Plaintiff is a female person that is 36 years of age and of African American descent.

17.    Plaintiff started to work for Allina in, as from belief, 2012 and continued to do so until she was constructively discharged in, from belief, 2021.

18.    Plaintiff is an African American and has worked for Allina for over 9 years as a Registered Nurse in a variety of nursing roles.   Plaintiff has never received a failing nursing performance review.  H e r  prior performance reviews showed her to be in good standing while meeting the department standards. Plaintiff was given much praise in these performance reviews.

19.    It is believed that according to Minnesota Nursing Board records she has never been disciplined or held a suspended nursing license.  Plaintiff is currently registered in the State of Minnesota with a valid unencumbered RN license.

20.    Plaintiff, as an employee of Defendant, has been subjected to racial slurs, harassment, discrimination, and retaliation from managers, peers, and patients, which was condoned and much tolerated by Human Resources and those in supervisory capacity. S h e has knowledge of minorities called names such as "*nigger*"" and subjected to being treated unfavorably because she is of a certain race.

5

Plaintiff has experienced harassment from her nurse manager Ms. Deb Scott, RN, and primarily by her supervisor Mr. Rousch, as well as from her Caucasian colleagues, which created a hostile and offensive work environment. This resulted in an adverse, unjust employment decisions by Allina which included, but was not limited to not investigating her reports of racial discrimination, allowing racial discrimination to continue and which ultimately culminated in her wrongfully and constructively discharged. Plaintiff was denied promotions and transferring out from under her abuse and discriminatory direct boss, Mr. Rousch. In fact, things were so knowingly bad, nurses of color created their own group and tried to support one another and helped nurses of color go to their union (nurses) begging for help.

21.    It became so bad, that many nurses of color were requesting transfers to other units from which Plaintiff worked.

22.    Another black nurse named Natasha Diggs resigned after not being able to cope with the harassment and abuse she experienced as a nurse of color. The same was also true for Isabella (last name currently unknown). She also transferred off Plaintiff's unit just to get away from the harassment and discrimination. A male RN named Beekam also transferred out of the unit Plaintiff was in, due to harassment. Many of the harassing incidents were done by a supervisor named Joe Rauch, and Brandi Locke, as well as others in supervisory power over Plaintiff.

23.    Other nurses of color were subject to much discrimination, just as Plaintiff was. The other nurses include Irene Ogmah, and an RN named Abu Ahmed. All these

individuals were part of the nurses of color group, as they needed one another for emotional support over the blatant discrimination which was occurring at Allina/Abbott.

24.    Nurse Megan Smith send around an email to literally 11 nurses of color and wrote: "Dear Co-workers, this is Megan from Obs. I am writing for two reasons. First, I quit my job on Obs last week for a number of reasons...I have watched a lot of crap and I want to let you know there is a small committee of people of color in MNA (union) wanting to gather stories and  to be more of a collective group when it comes to filing complaints or even launching lawsuits....I felt like things were very bad for my coworkers due to management and the system that closes some of us out and lets others in. The reason I left Obs is from day one, I saw bad racism going on, and event got involved in some of what was going on.... I saw the unfairness... tried to stay for various reasons, but...just can't trust Abbott anymore." That email is attached herewith and incorporated herein by reference.

25.    Nurse Kariton Scott sent texts out to nurses of color stating: I know many of you have spoken to Jean or myself regarding Abbott's discriminatory behavior towards nurses of color. This is not right and must be change and this is why we will be holding a meeting on Wednesday, January 29, from 1:00 p.m. to 4:00 p.m. at the Sheraton Hotel...We will be discussing what is happening and creating a list of changes we would like to see immediately. We will discuss next steps and our escalation plan...possibly collaborating with Government agencies." A copy of that text is attached hereto and incorporated herein by reference.

26.     Mr. Beekman sent a text around stating: Yesterday when I went to work at Abbott my manager asked the ACNM if it was a good thing that I came to work. …I was also fired by a white patient who said she wanted Sue a white nurse to take care of her because she was more comfortable having her as a nurse and felt Sue was more c competent and trusted her more.

27.     There are numerous other texts and emails from and between nurses of color regarding discrimination. Nurse Beekman wrote "there were three of us. Two with bachelor's and one master's who applied for ACNM position in the mental health units…Management gave it to nurses with two-year degrees who have had very little experience. My morale is low, and I am not sure if I have any hope any longer. I have been working as a nurse in Allina since 2003. A copy of this text is supplied herewith and incorporated herein by reference.

28.     The employment relationship between Plaintiff and Defendant Allina requires a greater obligation by the employer hospital to refrain from inflicting mental or emotional distress than would apply to a relationship between strangers. Defendant had a discriminatory bias against Plaintiff and all nurses of color.

29.     While working for the Allina Hospital/Abbott, Plaintiff experienced being the target of race, color, and contract discrimination by her employer. The management continued to pass over Plaintiff and other nurses of color in terms of promotion and the giving of more responsibility. Plaintiff and nurses of color were treated as inferior. The management allowed white nurses to replace black nurses in terms of patient care.

30. Plaintiff's supervisor repeatedly and continually discriminated against her which was condoned by Defendant's Human Resources.

31. An Allina supervisor intentionally set about a course to inflict mental and emotional distress upon Plaintiff out of retaliation for her complaining of discrimination. The movement by Defendant of reprisal caused damage to Plaintiff's career as well as causing severe mental and emotional distress which intensified to the point where Plaintiff quit – being constructively discharged.

32. Nurse Beekman sent around another text stating "this is an issue that many RNS have shared. There's no vertical movement in regard to the hierarchy and advancement and they use white RNS to fill those positions. It's a structural issue". A copy of this text is supplied herewith and incorporated herein by reference.

33. Ms. Beekman texted out another text from March 23, 2022, that states: "hello everyone, our racial diversity committee is working tirelessly to mitigate systemic racism and improve our working environment…"

34. Defendant knew Plaintiff was a person of African descent who is of the black race and used it as a false device to criticize her and make her miserable in the hope that she would quit.

35. Allina discriminated, harassed, and retaliated against her for resisting and reporting the forgoing discriminatory treatment against her. Plaintiff went to the Nursing Union and was told that the union would bring it up to human resources, but no change ever happened.

36. Defendant Hospital intentionally and maliciously discriminated and committed acts of reprisal against Plaintiff by doing damaging acts including making her perform acts that would foreseeably harm her, including wrongfully disciplining, abusing, insulting, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, engaging in acts of reprisal against her, threatening, penalizing, and ultimately causing Plaintiff to quit. Defendant was hired of Plaintiff, and many other nurses of color from going to the Union and filing legitimate grievances of discrimination. Defendant no doubt wanted Plaintiff to quit and move on.

37. Defendant starting to have frequent meetings accusing Plaintiff of being insubordinate and making Plaintiff feel very "low" in esteem. White nurses were telling Plaintiff's supervisor, Joe Rousch, things which were not true.

38. Plaintiff was discriminated against contrary to both Title VII of the Civil Rights Act of 1964, et seq., as amended and the and Minnesota Human Rights law. At all times relevant herein Plaintiff was qualified for her job position. Because of adverse employment actions which included changes to the terms, conditions, or privileges of employment; plaintiff constructively discharged all in violation of both federal and state anti-discrimination laws. At all times pertinent herein Plaintiff was qualified to do the job for which Plaintiff was wrongfully ousted and constructively discharged because of discrimination based on Plaintiff's Race (black), Color (black) and National Origin. But for her color and race, this would not have happened.

39. Plaintiff requested that she be allowed to transfer to Labor and Delivery to escape the

racial discrimination. However, her supervisor(s) refused to release her from a one-year commitment to the unit Plaintiff was working at the time.

40.    Plaintiff, at one point, had work restrictions due to a deep vein DVT, and Defendant would not accommodate. Defendant insisted that Plaintiff continue to provide direct care – which included transferring patients and assisting patients with their ambulation.

41.    Plaintiff knew that there were co-workers who did not respect nurses of color, call what is known as an "integrity line" to make false and negative reviews about Plaintiff.

42.    When Plaintiff wanted the Nurses Union to be present and be included in some of the grievances, who supervisors told her the nursing union is not needed and strongly discouraged Plaintiff from contacting her union steward.

43.    This complaint is not a product of a disgruntled employee. Indeed, a large number of nurses of color all felt, uniformly, they were discriminated against by Allina at Abbott N.W. Hospital. Many lawsuits have been commenced (i.e. See <u>Fielding v. Allina</u> (pending, court file number 21-1407 (DWF/DTS); ABEL v. ABBOTT NORTHWESTERN HOSPITAL, HUSTVET, Plaintiff-Appellant v. ALLINA HEALTH SYSTEM, Dr. Kimberly FINCH, Appellant, v. ABBOTT NORTHWESTERN HOSPITAL JAMISON, Plaintiff, v. ALLINA HEALTH SYSTEM, Defendant. Other nurses such as Lavivian Wesley made complaints of racist treatment. These are all on record with Defendant).

44.    There was express discrimination at Allina.  It was not subtle.

45.    The foregoing acts of Defendant caused Plaintiff physical pain, harm, and injury in 2019 and 2020.

46.    Defendant Allina from 2019 into 2020 discriminatorily violated its duty by its abusive, discriminatory, and insulting conduct in disregard of Plaintiff's interests.  Defendant's discriminatory and harassing behavior was known or should have been known would cause emotional distress and was certain or substantially certain to result because of their discriminatory and retaliatory conduct.

47.    Defendant Allina and its employees intentionally created an abusive, discriminatory, hostile, and law-breaking work environment for Plaintiff due to Allina policy and practice of using discriminatory approaches to working with Plaintiff as well as disregarding legal requirements.  This repeated and continuous intentional abuse of Plaintiff continued throughout Plaintiff's employment included wrongfully disciplining, abusing, insulting, failing to promote, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, engaging in acts of reprisal against him, threatening, penalizing, and ultimately terminating Plaintiff.

48.    During her employment Plaintiff was subjected to discriminatory remarks and treatment. Allina followed an intentional, severe, pervasive, and continuous course of outrageous and unfair discriminatory behavior directed toward severely harming Plaintiff.

49.    Allina subjected Plaintiff to a discriminatory, unwholesome, hostile, and abusive

work environment where insults and related harassment were pervasive, and the law was violated by Allina. Plaintiff was made to feel as though she was a misfit, incompetent, and not economically viable.

## RACE AND CULTURE IN NURSING

50.     Race is a barrier and source of inequality affecting ethnic minorities in nursing practice and education. Research has shown that racism adds to and significantly exacerbates the risk for health disparities among patients! along with a loss of opportunities in the nursing profession.

51.     In 2002, a researcher C.P. Jones[2] demanded that health care professionals explicitly name race and racism in the discussion of the health and well-being of the U.S. population. Adding that initiatives aimed at addressing and eliminating racial health disparities must explore the fundamental causes which are rooted in racism (Jones, 2002). The nursing sector should be concerned with issues such as racism. Race has been shown to cause inequality in nursing practice and education (Beard & Julion, 2016). As global migration continues, both the population and the nursing workforce in the United States become increasingly diverse. In 2011, the Institute of Medicine called for an increase in the number of ethnic minority health professionals to better meet the current and future health care needs of the U.S. population (Institute of Medicine, 2011) ethnic minority health professionals to better meet the current and future health care needs of the U.S. population (Institute of Medicine, 2011).

---

[1] Peek, et al., *Racism in Healthcare,* Social Science in Medicine, 2010, 13, 17
[2] Jones, C.P., *Confronting Institutionalized Racism,*

52.    The American Association of Colleges of Nursing (2019) asserted that, although nurses should be able to communicate and provide culturally competent care to all patients, providers who share similar characteristics as patients foster better relationships. Despite intensive efforts toward the goal of increasing ethnic minority nurses, engrained structural inequities remain. In fact, several studies have shown that immigrant nurses and nurses of color in the United States continue to experience acts of discrimination and racist comments from colleagues, and patients and their families (Beard & Julion, 2016; Deacon, 2011; Iheduru-Anderson, (2020a, 2020c); Iheduru-Anderson & Wahi, 2018, Moceri, 2014; Primeau et al., 2014). In some cases, immigrant nurses' accents have been used as reasons for discrimination in the workplace (Iheduru-Anderson, 2020b). In addition, studies have shown that nurses, nurse managers and nurse educators are not comfortable or feel ill-equipped to discuss race (Holland, 2015; Nairn et al., 2004, 2012).

53.    Iheduru-Anderson (2020a) reported that White nurses are often silent when they witness racial comments directed at Black nurses, and to avoid conflicts, ***Black nurses often fail to confront racist comments and behaviors.*** This lack of action has been described by DiAngelo (2018) as "White solidarity." Hassouneh and Lutz (2013) called on nurses to challenge racist comments and behaviors, to help cultivate an inclusive and respectful work climate. Moceri (2014) asked health care organizations to reduce bias in the workplace with conscious discussions of race and racism, while Waite and Nardi

14

(2019) urged nurses not to be    deluded into thinking that they are immune from racist and oppressive behaviors because of "our profession, our code of ethics and academic institutions declaration of their resolute beliefs of this ideology." Wros *et al.* (2009) advocated for nurses to be culturally sensitive not just with patients and families, but also with co-workers.

54.    There were reports of isolation, loneliness, and inadequate support (Iheduru-Anderson & Wahi, 2018; Robinson, 2014; Wheeler et al., 2013; Xu et al., 2008). Fear and distress from nurses of color's isolation undermined their confidence, often crippling their performance in the workplace. The following excerpt from Xu et al. (2008) demonstrates the experience of abject fear and loss of confidence: "I needed to check the order several times before I really gave the medication. That made me slower than other people... I felt kind of isolated; I felt uncomfortable. I was working in hell" (p. 39) Clearly, if there was not widespread and systemic racism at Allina/Abbott, there would not have been formed a Nurses of Color Group.

55.    My immediate supervisor, Joe Rouch wrongfully and intentionally withheld a transfer of me to maternity ward due to my race and color. He would also call me in for a meeting on my day off when he knew that was against policy and union contract. He did this due to my race, color, and creed. But for my race, color, creed, and being a minority, Defendant would have allowed me to transfer to maternity. Defendant, through their employees and Joe Rousch, breached an agreement to allow me to move wards and this is violative of 42 USC 1981.

56.    The staff would call a confidential "integrity" complaint line and make up lies and

falsehoods against me – in efforts to get me disciplined and/or fired.  Joe Rousch and others

in management knew this was going on and did nothing to prevent it or discipline others

making the calls. This was all due to my race, color, and creed.

57.    While Defendant would accommodate daycare and disability needs of others,

Defendant would not accommodate my needs as I had a young son in daycare at the time all

of this went on. This was all due to my race color and creed.

58.    While union contracts required investigation and finding of substantial evidence before

discipline, this was not followed in Plaintiff's case, who would be constantly dressed down,

barked at, and disciplined and confronted several times on baseless complaints. The Defendant

and its staff did not evenhandedly and without discrimination, hand out warnings and

discipline.  Only nurses of color were targeted here, and I was given discipline and reprimands

and intentional blocking of moving to the maternity ward, all as a direct result of my race,

color, and creed. But for my race and color, none of this mentioned above would have occurred

and I was damaged by it all.

59.    I was called a nursing aid as a showing of bullying and disrespect, by Defendant and

its employees and staff.  They knowingly allowed other staff and employees to call me an aide

and failed to correct that behavior. But for my race, color, and creed, this would not have

happened.

60.     That I was intentionally demeaned by other white nursing staff due to my race color and creed. I would be asked belittling questions such as how to flush patient drains. This would not have happened but for my race, color, and creed. The Defendant never acted on my complaints and investigate unprofessional behavior of others.

61.     White staff would also interrupt Plaintiff when supplying direct care to one patient, and essentially order her to see other patients who have vomited – to clean it up, versus calling on an aide.

**FEDERAL CLAIMS FIRST CAUSE OF ACTION AGAINST ALLINA FOR DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTSACT OF 1964, 42 U.S.C. § 2000E, *ET SEQ.*, AS AMENDED**

62.     The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

63.     Plaintiff was employed by Allina from, best recollection, 2012 through 2021.

64.     Plaintiff is an African American and seeks redress for discrimination on account of her race in violation of laws the United States in his capacity as an employee of Allina. But for Race, Plaintiff would have obtained promotions, like what nurses who did not have 4-year BSN degrees and the experience Plaintiff has had in nursing. But from Race, Plaintiff would have been free of terse exchanges from what nurses who were superior to herself.

65.     This claim is brought in and lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended.

66.     All conditions precedent to jurisdiction under Title VII, 42 U.S.C. § 2000e, *et seq.,* as amended, have occurred, or been complied with to it: a charge of employment discrimination was filed with the equal employment opportunity commission. The right to sue was received June 12, 2023, and this case is being filed 90 days of receipt of the notification of right to sue.

67.     The unlawful employment practices, harassment discrimination and retaliation alleged herein were committed within the state of Minnesota.

68.     Defendant Allina is a corporation and is authorized to do business in and is doing business in the state of Minnesota.

69.     Defendant Allina is an employer engaged in an industry that affects commerce and employs more than 15 employees.

70.     Allina is a corporation is a "person" within the meaning of 42 U.S.C. § 2000e et seq., as amended.

71.     While working for Allina Plaintiff experienced race discrimination, harassment, and retaliation.

72.     The work environment at Allina where Plaintiff worked in had both supervisors and co-workers who were discriminatory offensive by using the word ***nigger*** that is hereinafter referred elsewhere in this complaint as the *"N word"*. Plaintiff would hear phrases like "you people" (referring to blacks) These people include the following:

Brandy Locke, Joe Rousch.    Whenever Plaintiff had professional interactions with these people and others, the staff would raise their voice at Plaintiff, and had express resentment of Plaintiff.

73.    Plaintiff was sent to Human Resources and/or was talked too many times with factious claims of her inadequate job performance (despite her positive work review), treatment    of patients, generalized comments and "dress downs".

74.    Plaintiff heard supervisors and Caucasians on so many occasions stating *"you blacks."*

75.    Plaintiff was ignored by Staff when she and others similarly situated, complained of overt race discrimination.  All these persons and  Plaintiffs brought their complaints to the Nurses Union, who took   matters to management, but nothing was ever changed. Bigoted behavior continued, Plaintiff talked to other co-workers about the     incident, but they were afraid of retaliation and or fired altogether. They stated, "If  you report anyone white, they all come after you, so we  are  going  to  keep  our  mouths  shut." Plaintiff has heard superiors constantly reporting black Nursing Assistants to the Manager and on many occasions saying, ***"all these black Nursing Assistants want to do is sit on their asses, play with their phones and internet."***

76.    The  management  at  Allina  did  not  take  prompt  remedial  action  to  correct discrimination directed at Plaintiff but instead condoned it.

77.    Every time Plaintiff met with  Human Resources (HR), or Joe Rousch she  would constantly accuse Plaintiff of being disingenuous.  Plaintiff heard many times from management that *"*You and many blacks are too direct; you believe you know everything,

and you have to get the last word and I am tired of it." To say that Plaintiff was taken aback and felt hurt by the discriminatory attitude and approach is an understatement.

78.     While employed by Defendant, Plaintiff was subjected to numerous discriminatory co-workers.

79.     Plaintiff heard her supervisors and coworkers say things like you must be that black nurse that is floating here. Plaintiff would also be referred to constantly by supervisors as a nurse's aide. This occurred when Defendant and its employees knew Plaintiff was a BSN RN.

## PATIENTS' RACIAL COMMENTS

80.     There were times that patients would complain that they did not want a *"N word"* taking care of them. Nothing was done by Management. They, management, would often snicker and looked like they enjoyed hearing patients objecting to nurses of color, and to Plaintiff's care. Plaintiff heard patients state things like "*I am tired of you colored people taking care of me and you people need to go back to Africa."*

## RACIALLY DISCRIMINATORY ENVIRONMENT AT ALLINA

81.     To Plaintiff's knowledge there were No (0%) African American Managers or Supervisors in her unit. Nor were there any African American nurses in true supervisory positions over Plaintiff.

82.     The breakdown that she was aware of at Allina shows the discrimination in its hiring and promotion practices.

- Nurse Practitioner and Physician Assistants= approx. 30
- No (0%) African American Nurse Practitioner and Physician Assistants
- No Mentorship Program for African American nurses
- No Diversity Program or Training

- No Conflict Resolution Program or Committee
- Never attended a mandatory Diversity Training or Awareness
- Qualified African American nurses that have applied for leadership positions and were rejected.

83. All three positions were filled by less experienced Caucasian Nurses. In the case of Moses D., he was the interim third shift Assistant Nurse Manager for approx. (1) year. He applied for the position but was rejected for a candidate with less experience. He was then required to train that candidate.

84. Stations E3100 and H5000 have the highest rate of discrimination, retaliation, harassment, and lateral violence against African American nurses. Every African American nurse that has floated or worked on those two stations has had false accusations filed against them and all have been taken to HR multiple times.

EXAMPLES OF PREFERENTIAL TREATMENT FOR WHITE PEOPLE ON H5200

85. If you are an African American attending college and have a conflict with your class schedule and work, it is unlikely that supervisor would intervene and adjust your work schedule. However, other white workers will have their work schedule modified to accommodate. Plaintiff was constantly assigned shift times that did not work for her. This was between 2019 – 2021. Defendant would not accommodate her childcare schedules.

86. If you are African American seeking to modify your working hours (FTE) you are unlikely to have your request granted.

87. White supervisors are allowed to abuse black workers whereas these same white supervisors act differently and better to white workers.

88. African Americans are least recognized for their care giving efforts on The Abbott

Campus.

89.    Medication errors are tolerated by white workers but not by black workers.  There are habitual medication errors being made by select nurses, but no "coaching," verbal or writing reprimands are given by Ms. Scott or other supervisors. These nurses keep making  the same medication errors which places patients at risk.

90.    Racially discriminatory comments and treatment were acceptable  behavior at Allina. Plaintiff was frequently subjected to derogatory comments behind her back or in her hearing, with gestures like rolling their eyes and taking their hand and making a go away type of jesture. 86, Plaintiff overheard conversations where what nurses would say to black nurses or nursing aides that with regard to black patients, "They're your people so you should better understand them."

91.    Despite plaintiff's knowledge and excellent performance, she was not allowed to move upward in her career because of racial prejudice of the defendant. Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

92.    Defendant Allina discriminated  against plaintiff a black employee  with respect to conditions, privileges, advantages and benefits of employment with  defendant    specifically defendant maintained a separate unlawful prejudicial   attitude   towards   African-Americans and  denied  plaintiff  a  black  employee  the  opportunity of obtaining better conditions of employment, the design, intent,   purpose  and effect  being   to  continue   and   preserve defendant's long-standing  policy,  practice,  custom and usage of limiting the employment and promotional  opportunities of black employees of the defendant  because of her race. Again,  even  though  Defendant  had  actual  knowledge  of  discriminatory  behavior  toward

Plaintiff, she was blocked from transferring onto another unit such as Labor and Delivery.

93.    Like many nurses of color, Plaintiff felt she had no choice but to resign.

94.    Defendant followed a policy and practice of discrimination in employment against Blacks on account of their race. Under such policy and practice defendant Allina through its agents and employees repeatedly harassed, discriminated, and retaliated against plaintiff because she attempted to obtain equal opportunity employment for herself and because she filed the charges of discrimination with the equal employment opportunity commission.

95.    During the time plaintiff was employed by defendant Allina said defendant discriminated against plaintiff with respect to the terms, conditions, and privileges of employment because of plaintiff's race and color in violation of section Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e *et seq.,* as amended. They/it also discriminated and interfere red and impaired Plaintiff's employment and contract with Defendant, i.e., Collective Bargaining Agreement and Union protocol and rules.

96.    The discrimination consisted of dissimilar treatment for Plaintiff from her co-workers who were white. Based on such race, color, and national origin the Defendant Allina made unfounded complaints against the plaintiff.

97.    The forgoing discrimination against Plaintiff was in violation of 42 U.S.C. § 2000e et seq., as amended.

98.    Plaintiff had to work in a hostile work environment at Allina. The work environment was hostile based on Plaintiff's race, color, and national origin. Discrimination was

regular, repeated, and continual during Plaintiffs tenure of employment.

99.     Plaintiff an African American person while working for Allina was forced to work in a hostile work environment where her supervisors' subjected employees to discrimination based on race, color, and national origin. Further, the working environment at Allina condoned discrimination, harassment, a lack of respect for black employees and retaliation.

100.    Defendant failed to take any reasonable remedial measures and the discrimination continued throughout Plaintiff's career at Defendant.

101.    Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Plaintiff from it. To the contrary Allina condoned Supervisor's abusive acts that made Plaintiff and other nurses of color suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees. The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Plaintiff and took no positive steps to end discrimination directed at Plaintiff. Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory. Further, the Nurses union make comments to Plaintiff and others that there are not enough nurses of color to make a difference at Defendant, even though the union would try to approach management to make it a more equitable workplace.

102.    Defendant's discrimination against Plaintiff was perpetrated because Plaintiff was known by defendant to be of African descent, have a different color skin from his white

co-workers, and have ancestors of an African origin. Defendants' discrimination was repeatedly and continually abusive and damaging to Plaintiff. The Defendants remarks and acts created a hostile work environment. Plaintiff suffered adverse employment actions while employed by Allina.

103.    While employed by Allina Plaintiff was forced to work in a racially discriminatory work environment where over and over, she had to do her job while being subjected to discrimination, harassment, and retaliation. When she tried to reason with his discriminatory tormentors she was further harassed, discriminated and

104.    As a direct and proximate result of Defendant's treatment of her, Plaintiff, sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date. Further, Plaintiff incurred severe mental and emotional damage.

105.    Defendant's foregoing race discrimination, harassment and retaliation was the direct and proximate cause of damage to Plaintiff in excess of $75,000. But for her race and color and origin, Plaintiff would have been promoted, respected, and would have continued with employment with Defendant.

## SECOND CAUSE OF ACTIONAGAINST ALLINA FOR DISCRIMINATION BASED ON COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, ET SEQ., AS AMENDED

106.    The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

107.    Plaintiff was employed by Allina.

108.   The behavior stated in the statement of facts warrants and provides prima facie showing of discrimination and Plaintiff seeks damages for the same. The color of her skin was substantially darker than that of her supervisor and many of her co-workers.

109.   While working for Allina Plaintiff experienced color discrimination, harassment and retaliation as set forth above.

110.   The discrimination, harassment and retaliation were so traumatizing that she tried to block out the horrible discriminatory treatment just to be able to cope. The work environment at Allina where Plaintiff worked in had both supervisors and co-workers who were discriminatory and used the discriminatory and offensive and disrespectful conduct and interactions. The more Plaintiff contacted the Union and voiced concerns, the more Plaintiff was spoken to and warned with factious claims of her inadequate job performance (despite her positive work review), and treatment of patients. The management at Allina did not take prompt remedial action to correct discrimination directed at Plaintiff but instead condoned it.

111.   Every time Plaintiff met with management in Human Resources (HR), nothing changed. Again, as plead, many nurses of color complained so much that they formed a group called nurses of color. Coworkers were also discriminatory as stated above.

112.   During plaintiff's employment defendant maintained a discriminatory attitude toward plaintiff because of her dark skin color. Plaintiff also heard workers talk about what kind of name is DaJvon blacks always have ridiculous names.

113.   Allina had the ability to scrutinize supervisors such as those that supervised

Plaintiff but did not do so. Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Plaintiff.

114. During the time plaintiff was employed by defendant Allina said defendant discriminated against plaintiff with respect to the terms, conditions, and privileges of employment because of plaintiff's race and color in violation of section Title VII of the Civil Rights Act of 1964, et seq., as amended.

115. The discrimination consisted of dissimilar treatment for Plaintiff from her co-workers who were white. Based on such race, color, and national origin the Defendant Allina made unfounded complaints against the plaintiff.

116. By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was constructively discharged.

117. The unlawful discrimination against plaintiff continued until she separated from Allina.

118. The forgoing discrimination against Plaintiff was in violation of 42 U.S.C. § 2000e et seq., as amended. And 1981 by impairment of contract but for race.

119. As a direct and proximate result of Defendant's treatment of her, Plaintiff, sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date incurred severe mental and emotional damage.

### MINNESOTA STATE CLAIMS FOURTH CAUSE OF ACTION AGAINST DEFENDANT ALLINA FOR DISCRIMINATION BASED ON RACE IN VIOLATION OF MINN. STAT. §363A.08

120. The Plaintiff re-alleges the previous paragraphs of this complaint that are

incorporated herein by reference and are set forth herein.

121.    Plaintiff was employed by Allina from on or about 2012 through 2021. Allina wrongfully treated Plaintiff and as such, created such a hostile work environment and culture, Plaintiff resigned in 2021.

122.    The unlawful employment practices, harassment discrimination and retaliation based on race alleged herein were committed within the state of Minnesota. Plaintiff did make EEOC and / or Minnesota Human Rights Department and followed up as needed. Plaintiff received the Notice to Sue letter on June 12, 2023.

123.    Defendant Allina discriminated against plaintiff a black employee with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards African-Americans and denied plaintiff a black employee the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because of his race.

124.    The discrimination consisted of dissimilar treatment for Plaintiff from her co-workers who were white.

125.    By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was constructively discharged.

126.    The forgoing discrimination against Plaintiff was in violation of Minn. Stat. § 363A.08, et seq., as amended.

127.  Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action. Her supervisor's race discrimination, harassment and retaliation were so pervasive that it altered the terms, conditions, and privileges of Plaintiff's employment and created an abusive working environment. The supervisor's conduct of discrimination, negative remarks, insults, subjecting her to other abusive acts caused Plaintiff severe emotional harm.

128.  A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

129.  Allina had the ability to scrutinize supervisors such as those that supervised Plaintiff but did not do so. Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Plaintiff, from it.

130.  Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason. The employer did acts that were pre-textual. The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations.

131.  The forgoing discrimination against Plaintiff was in violation of Minn. Stat. § 363A.08, et seq., as amended.

132.  As a direct and proximate result of Defendant's treatment of Plaintiff, she sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and

reputation through the present date. Further, Plaintiff incurred severe mental and emotional damage and economic loss, all to her damage and detriment in a sum in excess of $75,000.00.

133.    Plaintiff demands a jury trial.


Dated: November 9, 2023            MORRIS LAW GROUP, P.A.

                                   *s/s Rich Hechter*
                                   Richard W. Hechter, (# 193537)
                                   7380 France Avenue South, Suite 250
                                   Edina, MN  55435
                                   Telephone: (952) 832-2000
                                   Email:  rhechter@morrislawmn.com

                                   ATTORNEYS FOR PLAINTIFFS


                            Acknowledgment

The undersigned hereby acknowledges that pursuant to Fed.R.Civ.P. Rule 11 and Minn.

Stat. §549.211, the Court may impose sanctions if it finds a violation of these sections.

Dated: November 10, 2023           *s/s Rich Hechter*
                                   Richard W. Hechter ( 193537)



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

To: Mrs. Dajovan B. Pettit
2219 Dupont Ave North
MINNEAPOLIS, MN 55411

Charge No: 444-2019-01077

EEOC Representative and email:    ADAM CARVILL
SLTP Manager
adam.carvill@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS** of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 444-2019-01077.

On behalf of the Commission,

Digitally Signed By Diane I. Smason
06/08/2023

Diane I. Smason
Acting District Director



PLAINTIFF'S
EXHIBIT

A

**Richard Hechter**

| | |
|---|---|
| **From:** | Lavivian Wesley <lswesley27@gmail.com> |
| **Sent:** | Tuesday, September 21, 2021 3:42 PM |
| **To:** | Richard Hechter |
| **Subject:** | Fwd: From Megan about Abbott and MNA and nurses of color |

Sent from my iPhone

Begin forwarded message:

> **From:** "Wesley, Lavivian S" <Lavivian.Wesley@allina.com>
> **Date:** April 14, 2020 at 9:05:49 PM CDT
> **To:** "lswesley27@gmail.com" <lswesley27@gmail.com>
> **Subject: Fw: From Megan about Abbott and MNA and nurses of color**

From: Megan Smith <mcsnihon@gmail.com>
Sent: Wednesday, April 1, 2020 2:10 PM
To: Pettit, Dajovan B; cucurull@allina.com; Mongare, Sarah M; Tehrani, Reza; Tinega, Isabella; Wesley, Lavivian S; Xiong, Mai Z; Adedayo, Aminat F
Subject: From Megan about Abbott and MNA and nurses of color

Dear Co-workers,

This is Megan from Obs. I am writing for two reasons. First, I quit my job on Obs last week for a number of reasons. Just wanted you to know. I want to be a support to you and if you need anything, please let me know. I am bringing food and sweets to W44 as often as I can to give you guys energy. I also know some of you left Obs before me, but I will send you sweets, too! = )

My second reason, is I was on a small meeting today with MNA. There aren't enough nurses of color active/engaged in MNA, for GOOD REASON. I personally get to pass whenever I want, in terms of bad treatment at Abbott, because I am totally Americanized and I speak Abbott-speak. But I have watched alot of crap and I want to let you know there is a small committee of people of color in MNA wanting to gather stories and try to be more of a collective group when it comes to filing complaints or even launching lawsuits. Just generally talking and having a safe place to share experience and have healthy conversations about being a nurse of color is also a big goal.

I am sorry I have not figured out how to be a stronger ally. I felt like things were very bad for my coworkers on Obs due to management and the system that closes some of us out and lets others in.

The reason I left Obs is from day one I saw bad racism going on, and even got involved in some of what was going on. I saw the unfairness. I tried to stay for various reasons, but then COVID-19 hit and I just can't trust Abbott anymore. There are health reasons I had to quit, too.

Anyway, I just wanted you to know about this committee - if you want to be part of it, I can pass info on as I keep attending and learning about it.

Please stay well. Also, please give me another address to reach you if you want, other than the Allina

1


PLAINTIFF'S EXHIBIT B



Karlton Scott 8:14 PM
to Jean, Brenda

Hello nurses,

I know many of you have either spoken to Jean or myself regarding Abbott's discriminatory behavior towards nurses of color. This is not right and must change and this is why we will be holding a meeting on Wednesday, January 29th from 1:00pm to 4:00pm at the Sheraton Hotel (2901 Chicago Avenue South, Minneapolis, Minnesota 55407) in the Chicago room. We will be discussing what is happening and creating a list of changes we would like to see immediately. We will discuss next steps and our escalation plan if the changes we want are not implemented including possibly collaborating with government agencies. There is only a fraction of the nurses of color at Abbott on this email chain so it's very important you let every nurse of color you know or see aware of this meeting. If you have any questions please do not hesitate to reach out to Jean or myself.

**Karlton Scott**

**Director of Organizing**

**Minnesota Nurses Association**

Direct: 651-414-2829

Cell: 651-202-6206





PLAINTIFF'S
EXHIBIT

**C**



NursesofColor(N...
Beekam, Bridgette, E4000,...

Yes y   April 23, 2020

+1 (763) 203-4992
As some of you may have
heard. There were three of
us. Two with bachelors and
one master's who applied for
ACNM position in the mental
health units. Management
gave it to nurses with two
year degree who have had
very little experience. My
moral is really low and I am
not sure if I have any hope
any longer. I have been
working as a nurse in Allina
since 2003.

+1 (763) 203-4992
As some of you may have
heard. There were three of us.
Two with bachelors and one m...

This is just wrong  And



PLAINTIFF'S
EXHIBIT

D



NursesofColor(N...
Beekam, Bridgette, E4000...

+1 (612) 80'
Yinka, I am ...
your terrible experience with
obvious discrimination in MH a

It is reassuring to hear from you. 😍😍

Hsuru MNA added +1 (651) 252-5634

Hsuru MNA

Yes. Isurum what's your take on this? what advice can you give on this situation?

This is an issue that many RNS have shared. There's no vertical movement in regards to the hierarchy and advancement and they use white RNS to fill those positions. It's a structural issue.

+1 (763) 203-4992



PLAINTIFF'S
EXHIBIT

E



https://tinyurl.com/djw5y4z2

Wednesday, March 23, 2022, 4:30pm – 6:00pm

https://t... Read more    5:43 PM

Hello Everyone, our racial diversity committee is working tirelessly to mitigate systemic racism and improve our working environment. We are kindly asking you to get involved by calling to these meetings, sharing your stories and being a part of the discussion. In solidarity we can make our work places less stressful than they are.

5:56 PM

Encourage your fellow nurses of color to get involved. Thank you!    5:59 PM





PLAINTIFF'S EXHIBIT

F

M Gmail

Gmail - Fw: False accusations and misconduct in the workplace.    Exhibit L

**Fw: False accusations and misconduct in the workplace.**

1 message

Edify My temple <dajovan@gmail.com>

Pettit, Dajovan B <Dajovan.Pettit@allina.com>
To: "dajovan@gmail.com" <dajovan@gmail.com>

Fri, Jul 19, 2019 at 11:15 AM

From: Pettit, Dajovan B
Sent: Friday, July 19, 2019 11:15 AM
To: Ness, Naomi V
Subject: False accusations and misconduct in the workplace.

I did not come forward sooner because I feared that more retaliation would happen towards me. On June 3rd, I worked with a nurse named Morgan Nyob, who falsely accused me of saying things which I did not say which has led to me being given a written corrective action. This nurse needs to be investigated for the inappropriate things that she did to a leukemia patient in E3052 that night and what she said about another nurse (Danny Contreras). On June 3rd Morgan Nyob told me that the patient in E3052 when she worked with her one night, had asked her to call the chaplain because she was dying. Morgan told me that she laughed and told the patient, "you are not dying you have leukemia." She also told me in the morning on June 4th that she went to assist that same patient in E3052 and the patient requested her to wear a mask. Morgan told me that she told the patient no and that she didn't need to. When I told her to talk with her manager about it she then said, "My manager already knows she "fucking Crazy." Morgan Nyob had told me that Danny Contreras never does his work and that one day she called him a fucking asshole. In the morning on June 4th around 7am Danny Contreras went into the patient in E3058's room and introduced himself. Morgan was angered and said that Danny always does this. When I suggested that we go in the room and give him report, Morgan was angered and said that she wasn't going to do that and she then said, "he always does this shit." That night when we were taking care of our patient in E3058 Morgan was showing me how to flush the truclos drain. The Y port had come unattached and instead of her getting a new alcohol swab, she took an already used one off of the bed and cleansed the port. She was very inappropriate that night when speaking about the patient in E3052 and the way she talked about Danny Contreras. I have already tried talking with Josine in HR and my manager Joe Rauch about her actions that night and neither of them investigated any of my claims. In fact I was told that if this is really something I feel is "serious" then I should take my concerns up to you and thus I am. I thank you in advance for addressing my concerns.

This message contains information that is confidential and may be privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

PLAINTIFF'S
EXHIBIT

G