## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

DaJovan Pettit,                                  Case No. 23-cv-2789 (JWB/JFD)

        Plaintiff,

v.                                               **ORDER AND**
                                                 **REPORT & RECOMMENDATION**

Allina Health System,

        Defendant.

---

Before the Court is Defendant Allina Health System's ("Allina") Motion for Attorneys' Fees (Dkt. No. 72) incurred in connection with its Motion to Compel (Dkt. No. 58) and Allina's Motion for Rule 11 Sanctions (Dkt. No. 91) against Plaintiff's attorney, Richard Hechter, and Mr. Hechter's firm, Morris Law Group, P.A. ("MLG"). The Court finds that neither Mr. Hechter's health nor staffing issues at his law firm excuse his conduct of responding to legitimate discovery responses two months late, only responding after a motion to compel was filed, and ignoring multiple communications from opposing counsel. The Court therefore orders Mr. Hechter and his law firm to pay Allina $9,752.50 in costs and attorneys' fees in connection with Allina's Motion to Compel.

The Court also finds Allina's request for Rule 11 sanctions justified and recommends dismissal with prejudice of Ms. Pettit's claims in their entirety as well as monetary sanctions against Ms. Pettit's counsel and his firm as sanctions for serious contraventions of Fed. R. Civ. P. 11 ("Rule 11").The Court finds that Mr. Hechter filed a complaint in this case that was actually a complaint filed by another lawyer in another

1

employment discrimination case against Allina, ignored Ms. Pettit when she stated the Complaint was inaccurate and needed to be changed, and then tried to blame Ms. Pettit for the Complaint's falsity.

The Court rejects Allina's request that Ms. Pettit, personally, be sanctioned. At multiple points in this litigation, Allina's counsel has sought sanctions against Ms. Pettit directly, a tactic which the Court cannot describe as anything but cruel. Ms. Pettit is a member of the public who came to court seeking relief for what she sincerely saw, perhaps incorrectly, as redressable injury. In seeking sanctions against Ms. Pettit personally for the misbehavior of her attorney, Allina's counsel has crossed the line separating zealous advocacy on behalf of a client from mere bullying. While in some cases sanctions against a party for the misdeeds of their attorney may be warranted, that is not the case here. Ms. Pettit is a working-class layperson who made a poor choice of lawyer. She told that lawyer that the complaint he had filed on her behalf was incorrect and needed to be amended, but she was ignored. This Court cannot require anything further of her and will not punish her financially for her lawyer's conduct.

## INTRODUCTION

Ms. Pettit commenced this action in September 2023, alleging racial discrimination against Allina, where she was employed between 2012 and 2021. (Dkt. No. 6 ¶¶ 1–17.) The complaint was filed and signed by her attorney, Richard Hechter, on September 11, 2023. (*See* Compl., Dkt. No. 1.) In her complaint, Ms. Pettit alleged, among other things, that she endured a wide variety of despicable, explicitly racist actions, including racial

slurs, directed at her by supervisors and other employees at Allina.[1] (*See e.g.* Compl. ¶¶ 55–127, Dkt. No. 1.) The supervisors were identified by name in the Complaint. These allegations persisted in Ms. Pettit's Amended Complaint, filed February 2, 2024. (Am. Compl. ¶¶ 55, 58, 62–133, Dkt. No. 25.) The February 2, 2024 amended complaint is the operative complaint for these motions.

## I.    **Allina's Motion for Attorneys' Fees Regarding its Motion to Compel Discovery**

First, the Court addresses Allina's Motion for Attorneys' Fees Regarding its Motion to Compel Discovery. (Dkt. No. 72.) This is a non-dispositive motion that the Court resolves via Order. *See* D. Minn. LR 72.2(a).

### A. Background

On March 20, 2024, Allina served Ms. Pettit with its First Set of Interrogatories, First Set of Requests for Production, and a Notice of Deposition of Ms. Pettit herself. (Dkt. No. 59 at 3.) Ms. Pettit's responses to the subject discovery were thus due by April 19, 2024. *See* Fed. R. Civ. P. 30, 33, 34.

When no responses were received by the due date, Allina's counsel reached out to Ms. Pettit's counsel on April 25, 2024, seeking an update. (Dkt. No. 59 at 3.) Plaintiff's counsel then requested an extension of time to May 6, 2024. Allina's counsel agreed, but noted that Ms. Pettit's deposition, originally scheduled for May 23, 2024, would need to

---

[1] The Court sees no value in describing in any detail the language Ms. Pettit's complaint alleges, other than that it includes some of the viler words used to refer to Black Americans.

be rescheduled. (*Id.*) Allina's request for alternative deposition dates went unanswered. (*Id.*)

In addition, according to the Court's Pretrial Scheduling Order, all pre-discovery disclosures were required by May 1, 2024. (Pretrial Scheduling Order 1, Dkt. No. 55.) When no disclosures were received by the deadline, Allina's counsel again reached out to Mr. Hechter on May 2 and May 7, 2024, to remind him. (Dkt. No. 59 at 4.) As of May 7, 2024, Ms. Pettit, through counsel, had neither responded to discovery requests nor provided the required initial disclosures, nor had she proposed new dates for her deposition as properly noticed.

On May 9, 2024, Allina's counsel made multiple attempts to contact Mr. Hechter by phone, only to encounter technical issues. (*Id.* at 5.) The next day, Allina requested an informal discovery teleconference with the Court, but this required agreement from all parties and Mr. Hechter did not reply to Allina's counsel's emails on the subject. (*Id.*)

Allina's counsel sent a letter on May 15, 2024, by email and U.S. Mail, warning Mr. Hechter that a motion to compel would be filed unless a response was received by 5:00 PM the next day. (*Id.*) When no response was received, Allina informed the Court that it intended to move to compel. (*Id.*) Despite further emails involving the Court over the next few days regarding scheduling, Mr. Hechter still did not engage. (*Id.*) The Court scheduled a hearing on Allina's motion to compel for June 27, 2024. (Dkt. No. 57.)

Ms. Pettit eventually served discovery responses on Allina on June 11 and 12, 2024, 53 days after they were due and one week after Allina filed its motion to compel. (Dkt. No. 76 at 1.) On June 13, 2024, Mr. Hechter filed a response to the motion to compel, advised

the Court that he had complied with discovery, and requested that the motion be stricken or stayed. (Dkt. No. 63 at 1–2.)

In a June 23, 2024 email the Court asked counsel for the parties whether there was still a need for the hearing on the motion to compel. (Dkt. No. 76 at 7.) Allina responded, stating that it believed the hearing was "still necessary" and requested leave to file a short reply, which the Court granted. Mr. Hechter did not seek leave to file a response, and instead emailed the Court Ms. Pettit's discovery answers and later her supplemental discovery answers as well. In response, the Court issued an order, dated June 25, 2024, reminding counsel that in federal court: "Discovery documents are only to be filed when the Court orders them filed or when they are used in the proceeding. These documents were not requested by the Court . . . [and thus] will not be read." (Dkt. No. 68.)

On June 27, 2024, the Court held a hearing on Allina's motion to compel as scheduled. Mr. Hechter explained in court that the delay in responding to Allina's discovery requests was due to staffing issues at his firm and the need for thoroughness in gathering information dating back to 2018. (*See* Dkt. No. 76 at 1–2.) Additionally, Mr. Hechter was briefly unavailable due to a skin cancer diagnosis and related surgery on May 31, 2024. (*Id.* at 2.)

At the hearing, the Court found that the circumstances did not justify Ms. Pettit's failure to comply with her discovery obligations and granted Allina's motion to compel. (*See* Dkt. No. 69.) The Court now considers Allina's request for attorneys' fees incurred in connection with the motion. (Dkt. No. 72.)

### B. Legal Standard

If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," Fed. R. Civ. P. 37(a)(5)(A), unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

The amount of fees "must be determined on the facts of each case, and the district court has wide discretion in making this determination." *Safelite Grp., Inc. v. Rothman*, 759 F. App'x 533, 535 (8th Cir. 2019) (quoting *Rogers v. Kelly*, 866 F.2d 997, 1001 (8th Cir. 1989)). To determine the amount of a reasonable fee award, the Court begins by multiplying the number of hours reasonably expended by hourly rates the Court finds to be reasonable. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

The party seeking fees is responsible for providing evidence of hours worked and the rate claimed. *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). A reasonable hourly rate is calculated based on the attorney's regular hourly rates as well as the prevailing market rates in the community. *Blum v. Stenson*, 465 U.S. 886, 896 (1984). In determining a reasonable hourly rate, the Court may consider the skill of

representation, difficulty of work performed, counsel's experience, and counsel's reputation. *Hensley*, 461 U.S. at 433.

## C. Discussion

Allina seeks $395.00 per hour for the services of attorney Holly M. Robbins, a partner at the law firm of Littler Mendelson with more than 29 years of experience, and $290.00 per hour for the services of attorneys Lehoan T. Pham and Stephanie A. Huisman, associates at the same law firm with 9 and 2 years of experience, respectively. (Dkt. No. 72 at 2–3.) Mr. Pham attests that these rates are reasonable. (*Id.*) The record does not provide substantial evidence of the prevailing rates in the community for attorneys with similar experience and reputation. However, based upon its independent knowledge of the prevailing rates, the Court concludes that the requested rates are reasonable for attorneys specializing in employment litigation defending a case of alleged race-based job discrimination. The Court notes that the unpleasant allegations in this case risked not just the client's money, as is true in all civil cases, but also presented a risk of reputational injury Considering the nature of the case, the Court's observation of counsel's written and oral work product, the number of years of experience of the lawyers involved, and the difficulty of the work, the Court finds that the requested hourly rates are reasonable.

In support of its fee petition, Allina also submitted summaries of the work its attorneys performed in connection with the motion to compel.[2] (Dkt. Nos. 72 at 1, 75-1,

---

[2]    Allina notes that the publicly available versions of the supporting exhibits have the "description" column redacted, but that it is prepared to file unredacted versions for the Court's *in camera* review, if necessary. (Dkt. No. 72 at 1.)

75-2.) It seeks an award of fees of $9,752.50, including 4.5 hours of Ms. Robins's time at the rate of $395.00 per hour and 5.7 hours of Mr. Pham's time and 1.8 hours of Ms. Huisman's time, both at the rate of $290.00 per hour.

Plaintiff is not challenging the sufficiency of Allina's billing records. Plaintiff simply notes that: "With the advent of word processing and even [artificial intelligence] and brief banks at large firms, motions to compel are largely templated. Plaintiff and her counsel [cannot] afford to pay $10,000.00 in fees for this motion to compel." (Dkt. No. 76 at 3.)

Plaintiff asserts that the Court must not order fees or costs when an "opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." (Dkt. No. 76 at 3 (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii)).) More specifically, plaintiff's counsel maintains that:

> Imposing a $10,000.00 sanction would likely cost Plaintiff the ability to have her day in court. It is beyond what can be paid. The case has merit[,] and Plaintiff has just noticed a Rule 30(b)(6) deposition with requests for production of documents. Imposing a high sanction with no bad faith or continued failure of disregarding a court order would not be just and reasonable in this case.

(Dkt. No. 76 at 4.) The Court finds little of this to be true. While more will be said in the discussion of the Rule 11 sanctions, it is not the sanction that has cost Ms. Pettit "her day in court," but the Complaint that Mr. Hechter cut-and-pasted, when even superficial examination would have showed that the facts alleged were not true, and in disregard of warnings from Ms. Pettit about the complaint's misstatements. For example, the Complaint (and the Amended Complaint) allege that specific Allina supervisors, identified

by name, used racial slurs. These persons did not supervise Ms. Pettit (though they did supervise the plaintiff in the case from which Mr. Hechter borrowed) and at her deposition Ms. Pettit testified that she had never heard these identified supervisors use this language. In short, the Court disagrees with Mr. Hechter that "the case has merit." Since the case has no merit, it is of no moment that a 30(b)(6) deposition has been noticed, or that documents have been requested. In support of his argument against sanctions, Mr. Hechter provides no authorities or verified facts, just Mr. Hechter's word, the veracity of which, as discussed below, Mr. Hechter has unfortunately given the Court reason to doubt. (*See id.*)

Consistent with its oral Order on Allina's Motion to Compel, (*See* Dkt. No. 69) the Court does not find Mr. Hechter's failure to serve timely disclosures and discovery responses justified on these facts. Mr. Hechter has failed to show that these circumstances make an award of attorneys' fees unjust. Mr. Hechter's staffing and personal health issues did not excuse his actions in failing to serve timely discovery responses for almost two months, ignoring opposing counsel's repeated attempts to meet and confer, and failing to bring his health to the Court's attention before the hearing on Allina's Motion to Compel. "Plaintiff's counsel had an ethical duty to handle this case properly and effectively," and if he could not do so, regardless of the reason, "it was incumbent upon Plaintiff's counsel to file a timely and appropriate motion for appropriate relief such as a motion to withdraw or to advise his client to obtain co-counsel or substitute counsel." *Landfall 2, Inc. v. Datascore-Ai, LLC*, No. 22-CV-80801, 2022 WL 17815491, at *6 (S.D. Fla. Dec. 15, 2022); Minn. R. of Pro. Conduct 1.3, cmt. 5 ("**To prevent neglect of client matters …, the duty of diligence may require … a plan, … that designates another competent lawyer to**

9

review client files, notify each client of the lawyer's death or disability, and determine whether there is a need for immediate protective action.").

In short, the Court finds that Mr. Hechter's failure to comply with discovery obligations that were legitimately a part of representing his client, including meeting Court-ordered deadlines, was not substantially justified and that no circumstances exist that would make an award of expenses unjust. The Court has worked with counsel who have staffing difficulties and with counsel who have health issues to craft litigation plans that allow cases to proceed. In this case, though, staffing and health issues were not even mentioned until the Court was considering sanctions because the discovery was nearly two months late with no explanation. The Court, however sympathetic it is to counsel's staffing and personal health issues, cannot ignore the unjustified dilatory conduct throughout the discovery process in this case.

Courts at times adjust the amount that is the product of reasonable hours worked multiplied by reasonable fees charged. In this case, that is not necessary, because of Allina's counsel's attestation that there were "multiple entries that Allina would have a good faith basis to seek recovery for as part of this Fee Petition," but that it chose not to include in its petition in light of the Court's observations of the mitigating circumstances— as discussed at the motion hearing. (Dkt. No. 72 at 4.) The excluded entries include Attorney Lehoan T. Pham's travel time to and from the courthouse for the oral argument, "the majority" of his time spent reviewing and revising the motion papers, and "the majority" of his time reviewing the underlying discovery responses. (*Id.*) Those entries

10

certainly appear relevant to Allina's prosecution of its motion to compel, none of which would have been incurred had Ms. Pettit's counsel carefully observed his ethical duty.

Accordingly, the Court concludes that an award of attorneys' fees in the amount of $9,752.50—which is based on reasonable hours at reasonable rates, and which already reflects a discount based on mitigating circumstances—is reasonable in this case. This award is based on Allina's Motion for Attorneys' Fees (Dkt. No. 72) alone. The Court recommends additional and separate sanctions for violations of Fed. R. Civ. P. 11 below.

## II.    Allina's Motion for Sanctions under Rule 11

> Our system of justice is not self-applying; it takes individuals specially skilled and trained in fashioning and presenting legal arguments. … [S]ociety has entrusted the legal profession with the unique privilege of representing the rights of others and in applying the judicial machinery to individual cases. With this unique privilege comes the *uncompromisable responsibility* for lawyers to conduct themselves in such a manner so as to maintain the integrity of and public confidence in the legal system. *The success of our system of justice requires that people have faith that justice can be obtained.* Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer.

*Esser v. A. H. Robins Co.*, 537 F. Supp. 197, 202–03 (D. Minn. 1982) (emphasis added) (internal quotations omitted). Attorney diligence, integrity, and compliance with the procedural and ethical rules of the profession are fundamental to a civil justice system whose decisions will be accepted as legitimate.

Unfortunately, in addition to the extensive litigation and admonishments from the Court over failures to comply with the rules and orders pertaining to discovery in this case, Ms. Pettit's counsel, Mr. Hechter, failed to meet the obligations set forth in the Federal Rules of Civil Procedure and the Minnesota Rules of Professional Conduct. Mr. Hechter

misrepresented the facts of this case to the Court in two separate certified complaints, misrepresented those filings to his client, and attempted to blame his client for his own behavior. Rule 11 sanctions are justified and should be imposed against Mr. Hechter.

## A. Background

Richard Hechter is an attorney at Morris Law Group, P.A. in Edina, MN and has practiced under Minnesota Attorney License No. 193537 since 1988.[3] The website of his law firm, MLG, states that he primarily practices in the areas of family law, personal injury, and medical malpractice and that he "is an accomplished and skilled litigator who has spent the last 30 years being widely recognized across Minnesota for his integrity, loyalty, and steadfast knowledge of state and federal law." Morris Law Group, *Richard Hechter*, https://www.morrislawmn.com/richard-hechter/ (last visited Nov. 20, 2024).

Mr. Hechter's sanctionable behavior in this case started shortly after he agreed to take Ms. Pettit's case. In drafting Ms. Pettit's complaint, he copied entire portions of the complaint in another case verbatim and passed it off as Ms. Pettit's own pleading. Copying a pleading is not *per se* a violation of Rule 11. In cases with the same or similar facts this is efficient. Here, however, Mr. Hechter copied portions of the previous complaint that made factual allegations that simply did not reflect Ms. Pettit's experiences, knowledge, and claims.

The complaint that was copied came from the case of *Desmond Fielding v. Allina Health System*, 21-cv-01407 DWF/DTS, (D. Minn.) (the "*Fielding* Complaint"). Mr.

---

[3] This information was obtained from the Minnesota Judicial Branch attorney license database at https://mars.courts.state.mn.us/AttorneyDetail.aspx?attyID=0193537.

Fielding also alleged racial discrimination by Allina, and his complaint detailed statements and experiences he alleged he had been subjected to at Allina, including racial slurs. (*See Fielding* Complaint.) As Allina states, Ms. Pettit's complaint "took the most charged allegations from the Fielding Complaint … and then falsely passed off Fielding's allegations as Pettit's experiences." (Def.'s Mot. for Sanctions 3, Dkt. No. 93.) Mr. Hechter filed both Ms. Pettit's original and amended complaints, both of which included false statements about her experiences, without reviewing it in detail with her, even after Ms. Pettit advised him that it needed additional editing.[4]

If this behavior was not enough, Mr. Hechter's response to Allina's Motion for Rule 11 Sanctions also contained a material misstatement of the law in an entirely inapposite case, which he claims stood for the proposition that a "[f]ine of complete attorneys [sic] fees is a grossly improper amount." (Pl.'s Mem. in Opp. 19, Dkt. No. 103.) Mr. Hechter's Memorandum in Opposition to Allina's Motion for Rule 11 Sanctions (Dkt. No. 103) cites "*In Re The estate of Prince Rogers Nelson*, Court File No. 10 PR 16-46." (Pl.'s Mem. in Opp. 19, Dkt. No. 103.) The Court read that case, a civil probate matter in state court, and was unpleasantly surprised to find it does not even mention Rule 11 or sanctions.

---

[4] During the hearing on Allina's Motion for Sanctions and Mr. Hechter's Motion to Withdraw, the Court held separate, *in camera* discussion with both Mr. Hechter and Ms. Pettit regarding privileged conversations between the two of them. Deciding Allina's Motion requires the Court to address some of those conversations. Where necessary, the Court does so in general terms to protect the rights that accompany the attorney-client privilege that Ms. Pettit continues to hold in her conversations with Mr. Hechter, despite the fact that the Court granted Mr. Hechter's Motion to Withdraw from representing Ms. Pettit in this matter.

13

**B. Legal Standard**

Rule 11(b) of the Federal Rules of Civil Procedure provides:

By presenting to the court a pleading, written motion, or other paper —
whether by signing, filing, submitting, or later advocating it — an attorney
or unrepresented party certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the
circumstances: . . .

(2) the claims, defenses, and other legal contentions are warranted by existing
law or by a nonfrivolous argument for extending, modifying, or reversing
existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity
for further investigation or discovery.

Fed. R. Civ. P. 11(b). The notes to Rule 11 make clear that "a litigant's obligations with
respect to the contents of these papers are not measured solely as of the time they are filed
with or submitted to the court but include reaffirming to the court and advocating positions
contained in those pleadings and motions after learning that they cease to have any merit."
Fed. R. Civ. P. 11, 1993 amendment notes.

Rule 11 allows a district court to impose an "appropriate sanction" when a party
files a complaint without making a reasonable inquiry that the claims are warranted by
existing law and that the allegations and other factual contentions have evidentiary support.
*Chandler v. Norwest Bank Minn., N.A.*, 137 F.3d 1053, 1057 (8th Cir. 1998). A sanction
imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct
or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The sanction
may include "nonmonetary directives" and "payment to the movant of part or all of the
reasonable attorney's fees and other expenses directly resulting from the violation." *Id*. "In

14

deciding whether an attorney is liable for sanctions for violating Rule 11, the standard is whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Midwest Disability Initiative v. JANS Enterprises, Inc.*, No. 17-CV-4401 (JNE/FLN), 2017 WL 6389685, at *5 (D. Minn. Dec. 13, 2017), *aff'd*, 929 F.3d 603 (8th Cir. 2019) (cleaned up) (citing *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017)).

Also relevant here are the Minnesota Rules of Professional Conduct ("MRPC"), particularly Rule 3.3: Candor Toward the Tribunal. Rule 3.3(a) states that a lawyer may not knowingly:

> (1) make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
> (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

Minn. R. of Pro. Cond. 3.3. Further, Comment 4 to that rule states that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." *Id*. at cmt. 4. Pursuant to Local Rule 83.6(a), the Minnesota Rules for Professional Conduct ("MRPC") govern practice in this district. *Schrader v. Hartford Life & Accident Ins. Co.*, No. 22-CV-241 (NEB/DJF), 2022 WL 19479776, at *1 (D. Minn. Dec. 16, 2022) (citing D. Minn. LR 83.6(a) ("An attorney who is admitted to the court's

bar or who otherwise practices before the court must comply with the Minnesota Rules of Professional Conduct, which are adopted as the rules of this court.")).

## C. Discussion

Mr. Hechter's behavior in this case, in many ways, mirrors a 2011 case in this District, *Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 604 (D. Minn. 2011). In *Brown*, also a race-based employment discrimination case, the plaintiff's complaint "parroted that in another case, in another Court, brought by different plaintiffs against a different company more than a decade earlier." *Brown*, 276 F.R.D. 602 (D. Minn. 2011). As in *Brown*, "the Complaint here does not simply track the legal theories or claims advanced in [the previous case], but rather copies large portions thereof verbatim, *including those regarding specific employment policies and practices*" and "merely changing the names of the parties." *Id.* (emphasis in original) In fact, the copied paragraphs of Ms. Pettit's complaint were more serious than those in *Brown* because they were so charged, explicitly racist, and named specific supervisors who, Ms. Pettit acknowledged at her deposition, had never supervised her and who she had never heard use the language alleged in the complaint. Further, the Court is persuaded that Allina is correct when it argues that had those false allegations not been included in the complaint, this case might well not have survived Allina's original Motion to Dismiss.

### i.    Violations of Rule 11

Here, as in *Brown*, there is no question that Mr. Hechter has violated Rule 11. Both complaints Mr. Hechter filed, the original and the amended, included factual allegations copied straight from the *Fielding* Complaint, and Ms. Pettit testified under oath at her

16

deposition that those factual allegations do not reflect her experiences. Mr. Hechter signed Ms. Pettit's amended complaint, knowing that it contained facts that he had copied from the *Fielding* Complaint, but despite that knowledge, he did not investigate the veracity of those claims as to Ms. Pettit and, instead, he lied to the Court by claiming Mr. Fielding's claimed experiences were those of Ms. Pettit.

   a.   *Unsupported Factual Contentions*

Rule 11 commands that all legal contentions must be warranted by existing law and all factual contentions in signed filings have evidentiary support or else the lawyer expects those contentions to have evidentiary support after discovery. Fed. R. Civ. P. 11(b)(2),(3). Mr. Hechter violated Rule 11(b)(3) when he filed each complaint with the copied allegations from the *Fielding* Complaint. These violations were compounded each time Mr. Hechter filed a signed document with the court without correcting those false allegations. The allegations in the *Fielding* Complaint are not true as applied to Ms. Pettit,[5] as Ms. Pettit confirmed in her deposition testimony. The following colloquies between Allina's counsel and Ms. Pettit in her deposition, in which Allina's counsel asked if Ms. Pettit had experienced the discriminatory acts described in her complaint, are illustrative:

> Q. So sitting here today, you have no evidence to support the allegation in your complaint that states, "Plaintiff would hear phrases like 'you people' referring to blacks"? You have no evidence to support that allegation, correct?
> A. That's correct.
> Q. Why is it in your complaint?
> A. I'm not sure.

---

[5] Nothing the Court says here should be construed as a finding as to the veracity of the allegations in the *Fielding* Complaint as they apply to Mr. Fielding's case.

Dep. of Pl. 161:3–11.

> Q. So you have -- sitting here today, you cannot point to any evidence to support the allegation in your complaint that someone at Allina used the E-R version of the N word; that's a fair statement?
> A. Yes, that's correct.

*Id*. at 162:7–11.

> Q. You have no evidence that a supervisor said "you blacks," correct?
> A. That's correct.

*Id*. at 164:18–19.

> Q. So sitting here today, you have no evidence to support the allegation that you heard superiors say, "All these black nursing assistants want to do is sit on their asses, play with their phones and Internet." That is a fair summary?
> A. That's -- that's correct, yes.

*Id*. at 165:18–23.

> Q. Ms. Pettit, on page 6, paragraph 20 still, it says, "Plaintiff was denied promotions and transferring out from under her abuse and discriminatory direct boss Mr. Rauch." You were never denied promotions by Allina, correct?
> A. That's correct.
> Q. Why does it say, "Plaintiff was denied promotions"?
> A. I do not know.

*Id*. at 211:24–212:8.

> Q. Ms. Pettit, is it fair to say that where your amended Complaint substantially mirrors Mr. Fielding's Complaint, you don't have an explanation as to why there is a substantial similarity between your complaint and Mr. Fielding's Complaint, correct?
> A. Yes, that's correct.

*Id*. at 201:6–11. Finally, when Allina's counsel asked Ms. Pettit why she seemed surprised by the content of her complaint and the allegations in it, she said, "I didn't say this; that's why. And I pushed, I believe, for many of these things to be amended." *Id*. at 167:11–13.

18

This exchange shows that the most charged allegations in Ms. Pettit's complaint were copied from the *Fielding* Complaint, that the copied allegations did not reflect her experience, and that she had no knowledge that her attorney, Mr. Hechter, had filed her complaint with the misstatements included, even though she had told him that the complaint was not ready to be filed. It is difficult for the Court to identify a more obvious violation of Fed. R. Civ. P. 11(b)(3) than Mr. Hechter's behavior in this case.

### b. *Unsupported Legal Contentions*

Mr. Hechter also violated Fed. R. Civ. P. 11(b)(2) by citing to "*In Re The estate of Prince Rogers Nelson*, Court File No. 10 PR 16-46" to support his legal position that a sanction of the entirety of a party's attorneys' fees and costs was inappropriate. (Pl.'s Mem. in Opp. 19, Dkt. No. 103.) Nothing in that case addresses Rule 11 sanctions.[6] Misrepresenting the legal significance of a case or the holding in a case is a violation of Rule 11(b)(2). The disturbing irony of this particular false statement to the Court is that it was made in Mr. Hechter's memorandum *in opposition to Allina's Motion for Sanctions under Rule 11*. Mr. Hechter violated Rule 11 in his efforts to avoid sanctions for his previous violations of Rule 11.

Mr. Hechter's behavior in litigating this case has egregiously undermined public trust in the legal system, the cost of which is "incalculable," *In re Engle Cases*, 283 F.

---

[6] The case was not easy to find because, while the Minnesota Court of Appeals has filed five published opinions in the probate proceedings that followed Prince's death, none of those opinions say anything at all about sanctions. The Court eventually did locate the district court decision to which Mr. Hechter refers, *In re Estate of Nelson*, No. 10-PR-16-46, 2016 WL 9175545, at *1 (Minn.Dist.Ct. June 08, 2016), and found that it does not say what Mr. Hechter represents it says, or even anything close.

Supp. 3d 1174, 1256 (M.D. Fla. 2017). He made deliberate misrepresentations to the court, on both factual and legal issues that very likely may have been outcome-determinative if he had told the truth. By making misrepresentations of fact and law to the Court, Mr. Hechter not only exposed himself to serious consequences, but he also wasted the Court's resources and undermined public confidence in the rule of law.

ii.    Appropriate Sanctions under Rule 11

The Court does not find, nor does Allina allege, that Mr. Hechter or MLG undertook the behaviors violating Rule 11 with malice or intent to cause harm, but that does not negate the consequences that their actions have had on Allina, the Court, and Ms. Pettit. Those consequences and the general harm done to the legal system by Mr. Hechter's actions must be ameliorated and prevented from occurring in the future.

Rule 11 gives the District Court wide discretion in fashioning sanctions for its violation, and the Court finds that a multi-pronged approach to sanctions is necessary here. Plaintiff's case should be dismissed, in its entirety, and with prejudice, and a sanction in the amount of $10,000 should be paid jointly and severally by Mr. Hechter and his law firm.

First, the Court finds that allowing this case to go forward, in light of its record so far, will cause continued harm and therefore recommends dismissal of this case with prejudice, both as a sanction for the Rule 11 violations, and because once the false statements and the statements copied from the *Fielding* complaint are removed from the complaint, there are no well-pleaded allegations of race-based employment discrimination due to a hostile work environment. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

(Rule 8 requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The Court finds that it is unlikely that Ms. Pettit's Amended Complaint, and specifically, her hostile work environment claims, would have survived a Motion to Dismiss under Fed. R. Civ. P 12(b)(6) had the Amended Complaint not included the assertions copied from the *Fielding* Complaint. As discussed above, without the Fielding allegations, Ms. Pettit's allegations are, at best, allegations of "microaggressions"—verbal slights that communicate disdain for members of a particular race. Such microaggressions have been held by federal courts to be insufficient to establish employment discrimination on a hostile work environment theory under Title VII. "The standard for demonstrating a hostile work environment under Title VII is 'demanding,' and 'does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace.'" *Dyer v. R.R. Donnelley & Sons Co.*, No. 20-2342 (PAM/JFD), 2021 WL 5644332, at *5 (D. Minn. Dec. 1, 2021) (quoting *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017); see also *Chen v. Yellen*, No. 3:14cv50164, 2021 WL 4226202, at *12 n.4 (N.D. Ill. Sept. 16, 2021) ("Regardless of whether an aggression is micro or macro, the Court considers the evidence of hostility in totality …Whether the sum comes from a large number of small incidents, or a small number of larger incidents, the result is the same. Here, her cited incidents do not add up to a hostile work environment, no matter what label they are assigned.").

21

To be clear, though, even if microaggressions were actionable, dismissal would still be warranted as a sanction for the factual misrepresentations in the complaint alone. Rule 11 imposes on attorneys a duty to be truthful in their filings with the court. Their duty of truthfulness includes not only a responsibility to refrain from submitting to the Court something the attorney knows not to be true, but the equally important responsibility to reasonably inquire into the truth of a factual allegation before claiming it as true in a submission. Mr. Hechter's act of copying the allegations in the *Fielding* Complaint clearly did not fulfill either responsibility. The copying was obviously done without much care or thought, as shown by the copying without amendment of allegations against specific, named individuals who supervised Mr. Fielding, but that Ms. Pettit testified at her deposition did not supervise her (and never had). (*See* Amended Compl. ¶20, Dkt. No. 25 ("Plaintiff has experienced harassment from her nurse manager Ms. Deb Scott"); Dep. of Pl. 71:5–72:6 ("Q: She was never one of your managers? Is that a fair statement? A: That's correct. … Q: Ms. Scott never discriminated against you, correct? A: No, that's correct. … she never did discriminate against me. Q: Ms. Scott is completely unrelated to your lawsuit, correct? A: That's correct.")). The Court can only speculate as to what lies behind such behavior; Mr. Hechter might have thought nobody would read these complaints carefully, he might have been on a deadline he did not think he could meet, or any other reason. But the Court does not need to speculate to note that Mr. Hechter accused individuals, by name and in a public document, of racism, and then he did it again in the amended complaint *after* Ms. Pettit had told him the allegations in the complaint were not true as to her. (*See* Dep. of Pl. 167:6–13 ("Q: Ms. Pettit … you seem a little surprised by what is in some of

22

these allegations. … A: I didn't say this, that's why. And I pushed, I believe, for many of these things to be amended.").[7]

Second, as noted above, Rule 11 not only sets it as desirable that a sanction for a violation should be calibrated to deter similar misbehavior in the future, it states that courts "must" use that metric in determining the amount of an appropriate sanction. This amount is less than the amount Allina spent defending this lawsuit. After careful consideration, the Court finds that Mr. Hechter and his firm, MLG, are jointly and severally liable for payment to Allina of $10,000. The Court finds this amount sufficient, but not greater than, the amount needed to deter future behavior of this sort. To this, the Court adds $9,752.50, the amount ordered as a Rule 37 sanction related to Allina's motion to compel. The total amount of sanctions imposed in this case is therefore $19,752.50.

The Eighth Circuit recently held that it was in the discretion of the District Court to award the reasonable expenses incurred by a city in defending against duplicative litigation as monetary sanctions. *Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th 1045, 1049 (8th Cir. 2023). For the purposes of sanctions, the Court sees no relevant difference between an attorney causing an opponent to incur legal fees as the result of a second, duplicative lawsuit (as in *Kezhaya*) and a litigant filing a complaint with allegations it knows to be false, which results in the otherwise unjust continuation of a single lawsuit. In *Kezhaya*, the Eighth Circuit affirmed a District Court who awarded a defendant's reasonably-incurred legal fees in their entirety against a single attorney for violations of

---

[7] Information provided by Ms. Pettit *in camera*, including email communication between Ms. Pettit and Mr. Hechter corroborates this testimony.

Rule 11. Here, the Court recommends that Mr. Hechter, jointly and severally with his firm, be ordered to pay Allina a sum that is considerably less than the amount Allina spent defending itself against a case that should not have been brought.

Mr. Hechter has told the Court that he is "a working-class lawyer" on a small income and with modest savings, who cannot afford substantial sanctions. Mr. Hechter's argument, if made a general rule of sanctions law, would allow lawyers who are not financially well off to commit sanctionable behavior without consequence. In addition, these sanctions are joint and several with a law firm. Finally, the Court has been given good reason not to believe Mr. Hechter unless what he says is corroborated

The Court does not know and cannot speculate as to Mr. Hechter's intent when he filed a complaint with false statements and a brief with clearly misstated legal assertions, but each of the offending documents was filed with the knowledge that they contained false statements and without Mr. Hechter having exhibited the diligent review required of any lawyer filing papers with the Court under Rule 11. The sanctions here are sufficient, but not greater than, the amount needed to ameliorate the harm caused by Mr. Hechter's actions and to prevent similar misstatements in the future.

## **CONCLUSION**

As officers of the Court, attorneys are expected to act with professionalism and candor to the Court and to their fellow litigants. Mr. Hechter failed to meet that expectation when he filed two different pleadings with the Court that made false statements about his client's experiences that accused certain individuals of using racial slurs. These filings were made even after his client told him that they were not ready to be filed. Further, in

defending against Allina's motion for sanctions, he misrepresented the legal conclusions of a state court case which was entirely irrelevant to the issue he argued. These actions constitute violations of Rule 11 and the Minnesota Rules of Professional Conduct. As sanctions for his violations of Rule 11, the Court recommends that Mr. Hechter and his firm be ordered to pay $10,000 towards Allina's reasonably incurred fees and costs and that this case be dismissed with prejudice.

## RECOMMENDATION

Based upon the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Rule 11 Sanctions (Dkt. No. 91) be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent Allina seeks dismissal of Ms. Pettit's claims, the motion should be **GRANTED** in full.

2. To the extent Allina seeks attorneys' fees, the motion should be **GRANTED in part.** Mr. Hechter and Morris Law Group should be ordered to pay Allina $10,000 towards Allina's reasonable attorneys' fees and costs associated with litigating this matter. To the extent Allina seeks attorneys' fees from Ms. Pettit herself as a sanction under Fed. R. Civ. P. 11, the motion should be **DENIED**.

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

## ORDER

Based upon the foregoing and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED that:**

1. Mr. Richard W. Hechter shall pay to Defendant Allina Health System $9,752.50 for attorneys' fees incurred in connection with its Motion to Compel (Dkt. No. 58).

2. The Clerk of Court is directed to send a copy of this Order and Report and Recommendation via U.S. Mail to both Ms. Pettit and Mr. Hechter.

Date: January 30, 2025

_s/ John F. Docherty_
JOHN F. DOCHERTY
United States Magistrate Judge

26